SMITH *et al.,* commissioners, *v.* BOARD OF EDUCATION OF WASHINGTON COUNTY.

GILBERT, J. 1. Paragraph 1 of section 4 of article 8 of the constitution of Georgia, as amended in 1919 (Georgia Laws 1919, p. 66), in so far as it is material, reads as follows: "Authority is granted to the counties and municipal corporations, upon the recommendation of the corporate authority, to establish and maintain public schools in their respective limits by local taxation. The proper county authorities whose duty it is to levy taxes for county purposes in this State shall, on the recommendation of the board of education, assess and collect taxes for

the support of public schools under its control, not less than one nor more than five mills on the dollar of all taxable property of the county outside of independent local systems, which shall be distributed equitably according to the school population, tax values, the number of teachers and their grade of license, among the public schools therein." Under a proper construction of the foregoing provision of the constitution the Board of Education of Washington County is invested with the power and authority to recommend to the Board of Commissioners of Roads and Revenue of said county the levy of a tax not less than one nor more than five mills on the dollar of all taxable property of the county outside of independent local systems, for the support of public schools under its control. Likewise, under said provision, the recommendation of the board of education is mandatory upon the board of commissioners.

2. The board of education " is not a body corporate with authority to sue and be sued, in the ordinary sense." *Mattox* v. *Board of Education*, 148 *Ga.* 577, 580 (97 S. E. 532, 5 A. L. R. 568). But Washington County is a public corporation. Civil Code (1910), § 6594; *Millwood* v. *De-Kalb County*, 106 *Ga.* 743 (32 S. E. 577); *Town of Decatur* v. *DeKalb County*, 130 *Ga.* 483 (61 S. E. 23); *County of DeKalb* v. *Atlanta*, 132 *Ga.* 727 (65 S. E. 72). It acts through its officers and agents. Under the law the county acts through its board of commissioners of roads and revenue in matters of finance, construction of roads, bridges and the like. In matters of education the county acts through its board of education. When the board of commissioners of roads and revenue acts upon matters lawfully within their jurisdiction, it is the county acting " by corporate authority." When the board of education acts upon matters lawfully within its jurisdiction, it is the county acting through " its corporate authority." Therefore the constitutional provision quoted above, properly construed, authorizes counties, upon the recommendation of the board of education, to establish public schools, and the words " corporate authority " contained therein refer to the board of education.

3. The motion adopted by the board of education, in which they voted " a county-wide tax of five mills " for school purposes, must be construed in connection with the constitution and the official notice signed by the president and secretary of the board and served upon the board of commissioners of roads and revenue, which recited that the tax was levied upon the taxable property of Washington County not included in the corporate limits of the towns of Tennille and Sandersville. The words " a county-wide tax," thus construed, amounted to a recommendation to the board of commissioners of roads and revenue that the tax levy was not to include property within the corporate limits of the named municipalities.

4. Neither the motion adopted by the board of education nor the official notice served on the board of commissioners of roads and revenue was unlawful or void for any reason assigned, and the same were binding upon the respondents.

5. The tax levy was for the scholastic year 1921-22, and in the absence of affirmative proof to the contrary it will be assumed that the scholastic year began in the fall of 1921 and ended in the spring of 1922. The term " scholastic year " is one of common use, and is generally under-

stood to mean a term of about nine months, and not for two calendar years. Thus construed, the notice served upon the board of roads and revenue was not illegal, and afforded no authority to the respondents to refuse compliance therewith.

6. The notice was served on the board of roads and revenue on September 8, 1921, after the said board had officially met and completed its tax levy for the year, but before the commissioners adjourned their meeting. The notice was not served too late to require the respondents to levy the tax, and afforded no basis for a refusal to comply therewith.

7. The fact that the petition for mandamus was not presented to the judge until November 2, 1921, and that a great many taxpayers had already paid their taxes for the year 1921, affords no legal reason why the writ of mandamus was not properly made absolute.

8. Likewise the fact that "the hearing of the case was set for the 5th day of December, 1921, and that the 1921 tax levy had been made and advertised and the tax-collector's books had been open for the collection of taxes for over two months," afforded no reason why the writ of mandamus could not be made absolute.

9. The fact that a decision was rendered on January 9, 1922, all taxes, by law, being due and payable on or before December 20, 1921, and it being the duty of the tax-collector after the last-named date to issue executions against those who had defaulted in the payment of taxes, afforded no legal reason why the mandamus absolute could not be granted.

10. Under the pleadings and the evidence the "corporate authorities" of Washington County legally recommended the tax levy, the board of education being the proper "corporate authority" to establish and maintain the county public schools and to determine the amount of taxation required to support such schools.

11. Under the constitutional provision quoted, power and authority is vested in the board of education to fix the rate of taxation, and said authority is not conferred upon the board of commissioners of roads and revenue of the county. The entire local control of schools is placed in the hands of the board of education, and the responsibility and authority is upon said board to determine what taxation is necessary for the support of the schools, and they are required to recommend accordingly to the board of commissioners of roads and revenue, who must levy the tax as recommended, no discretion being vested in the board of commissioners as to the rate of taxation.

12. It is insisted by plaintiffs in error that there was an issue of fact for the jury under the pleadings and the evidence in the case, because the answer alleges as follows: "Respondents further aver that a levy of five mills is unnecessary and excessive, and that it is an abuse of discretion upon the part of the relators to make such rate in their recommendation at this time, there being no necessity therefor." Under the constitutional provision above quoted, the power of fixing the rate of taxation, as already stated, is vested in the board of education, subject only to the limits therein stated. Moreover, the allegations that the levy is "unnecessary and excessive," and "an abuse of discretion" are mere conclusions of the pleader, and no facts are stated.

13. The court did not err in granting a mandamus absolute.

*Judgment affirmed. All the Justices concur.*

No. 3066. JULY 11, 1922.

Mandamus. Before Judge Hardeman. Washington superior court. January 9, 1922.

This was a petition for mandamus, brought by the Board of Education of Washington County against the Board of Commissioners of Roads and Revenue of that county, to require the latter to levy a tax of five mills for the support of the public schools of Washington County not included within the limits of the municipalities of Sandersville and Tennille. The court granted a mandamus absolute, and the respondent excepted. The case was submitted to the presiding judge upon the pleadings and the evidence. The following evidence was introduced by the plaintiffs: " Extracts from Minutes of Board of Education, dated July 6, 1921. On motion, a county-wide tax of five mills was assessed for school purposes for the year 1921, the board voting unanimously for this levy." M. R. Tucker testified: " I am a member of the Board of Roads and Revenues of Washington County, and one of the respondents in this case. The notice, a copy of which is set forth in paragraph 8th of the relators' petition, was not served on the board on the 7th day of August, 1921. This notice was served on the 8th day of September, 1921. The board had already officially made and completed its tax levy for the present year at the time the notice was served. However, the notice was served before the commissioners adjourned their meeting that date. We had completed our work, and was preparing to take the matter to the grand jury, when Mr. Davis, the county school superintendent, brought in the notice." The petition for mandamus alleges: " On the 8th day of September, 1921, the following official notice was given by plaintiff to the defendant, to wit: ' It appearing that it becomes the duty of the Board of Education to assess a rate of taxation not to exceed five mills on the dollar, and it also appearing that it is the judgment of the Board of Education that a levy of five mills is necessary for the best interest of the schools, it is hereby ordered that the Board of Roads & Revenues be instructed to levy the said rate of five mills upon the taxable property of Washington County, not included in the corporate limits. of the towns of Tennille and Sandersville, for the use of the public schools of Washington County for the scholastic year 1921-22, Done by order of the board, this Aug. 7, 1921. T. J. Fulghum, Pres. Thos. J. Davis, Sect.' " The assignments of error are: (1)

The original recommendation of the board of education was illegal and void, because it recommended a county-wide tax, while under no view did the board of education have power to recommend such tax except outside of local independent systems, and the board of commissioners of roads and revenues were not required to levy any tax whatever under the language of the recommendation, such tax as recommended transcending the authority of the board of education. (2) The notice served upon the board of commissioners of roads and revenues does not appear to have been officially authorized by the board of education; and respondents had the right to refuse to levy any tax whatever under same, because it differed from the original recommendation of the board of education, in that the notice as served required the levy of a tax of five mills outside of independent local systems, while the official recommendation was for a county-wide tax. (3) The notice as served required the levy of a tax for the scholastic year 1921-22, and it would be illegal to levy a tax for two years or for more than one year. (4) The notice was served after the board of commissioners of roads and revenues had officially made its tax levy on the 8th day of September, 1921; and was too late to require respondents to levy the tax as recommended. (5) The petition for mandamus was not presented to the judge of the superior court until November 2, 1921, after a great many taxpayers had paid their taxes for the year; and the issuance of the writ at that time being nugatory, the same was improperly granted. (6) The hearing upon the petition for mandamus was set for Dec. 5th, 1921; and the issuance of the writ of mandamus at said date was nugatory and too late, because at that time the tax levy had been made and advertised and the tax-collector's books had been for more than two months open for the collection of taxes. (7) The writ of mandamus was not granted until Jan. 9, 1922, while all taxes were due and payable Dec. 20, 1921, and on that date it became the duty of the tax-collector to issue executions against defaulters; and the writ was illegal and void because it required the levy of. a tax for the previous year. (8) From the evidence and the pleadings it appears that the corporate authorities of Washington County have never recommended or consented to such levy, and the authority of the board of education does not arise until the organic law permitting local taxation for public schools is put

into effect by official action by the proper corporate authorities of the county, and for that reason the commissioners of roads and revenues were not required to make the levy; and it was error to make the mandamus absolute. (9) The constitutional amend-. ment of 1919 referred to in the petition (Georgia Laws 1919, p. 66) does not confer upon the board of education authority to fix the rate of taxation, but that authority is conferred by said amendment upon the board of commissioners of roads and revenue, or the proper county authorities, and it is not within the discretion of the board of education to fix the rate. (10) The mandamus, if made absolute, should have required only that the respondents levy a tax, exercising their discretion in fixing the rate between one and five mills.

*J. Hines Wood, E. W. Jordan,* and *A. W. Jordan,* for plaintiffs in error.

*W. M. Goodwin* and *A. R. Wright,* contra.