## BOARD OF EDUCATION OF HOUSTON COUNTY *et al. v.* HUNT.

1. A contract between the county board of education and a person for the transportation of pupils to and from a public school is not one which is required by section 386 of the Code of 1910 to be in writing and spread upon its minutes.

2. The board of education of Houston County was without authority to consolidate two or more rural public schools of that county with the school established and maintained by the City of Perry under the act of September 26, 1889 (Acts 1889, p. 1295), providing for the establishment and maintenance of an independent school system in that city, and forbidding said board to establish and maintain any school in that municipality; and such board was without authority to contract for the transportation of pupils to and from said school, and to expend the school funds of that county for that purpose.

3. The Court of Appeals did not rule, in the case of *Board of Education* v. *Hunt,* 29 *Ga. App.* 665 (116 S. E. 900), that the plaintiff was entitled to recover upon the contracts sued upon in that case and involved in this case, thus fixing the law of this case; but only held in that case that the board of education of Houston County was not such a body corporate as could sue or be sued.

No. 4353.    FEBRUARY 18, 1925.

Mandamus. Before Judge Malcolm D. Jones. Houston superior court. April 16, 1924.

Hunt filed his petition against the members of the county board

of education and the county school superintendent of Houston County, in which he alleged that on or about August 10, 1920, said county board of education and the members thereof contracted to transport the pupils from the Lakeside school district and certain pupils from the Union school district to and from the school at Perry, Ga., during the period of nine school months of four weeks each, beginning with the opening of the Perry school in September, 1920, said contract providing for one round trip each school day; that on or about September 10, 1920, said contract was enlarged and renewed so that petitioner should make two round trips per day for the transportation of the above-mentioned pupils and of certain pupils from the Kathleen school during said period, for which services said county board of education and its members, acting as such, agreed to pay him the sum of $150 per month, payable at the end of each month; that on or about September 9, 1920, he entered upon the fulfillment of said contract, and transported said pupils to and from the school at Perry, according to the terms of said contract, during said period as he had contracted to do; that said board paid him the sum of $150 per month for eight school months of four weeks each of said period, but refuses to pay him $150 for transporting said pupils for the ninth month as agreed; that said board is now indebted to him in the sum of $150 for services performed under said contract, with interest thereon from the first Tuesday in January, 1921; that prior to making said contract said board had consolidated the Lakeside school and a portion of the Union school with the school at Perry, and had determined to provide means for the transportation of the pupils from said Lakeside school and Union school to and from the school at Perry; that said board had the right to provide for the transportation of said pupils and to make said contract with petitioner; that said county school superintendent has refused to audit and said board has refused to approve for payment the sum of $150 due petitioner for transporting said pupils for the ninth month under said contract, and have refused and still refuse to pay said sum to him, and still refuse to audit and approve for payment said sum, although he has often requested that the same be done; that said superintendent and board informed petitioner on August 16, 1921, that said board would not provide transportation for the pupils of the Union school district, but would provide transportation for the

pupils of Lakeside School for the school year 1921-1922, and offered to employ him to transport the Lakeside school pupils to and from the school at Perry; that said board and superintendent employed petitioner to haul said Lakeside pupils to and from the school at Perry during the eight months of four weeks each beginning February 5, 1921, at and for the sum of $80 per·month, to be paid by said board and superintendent at the end of each month; that prior to the making of said contract said board had abolished the Lakeside school and consolidated it with the school at Perry, and had determined to provide means for the transportatioñ of pupils of Lakeside to and from Perry, which they had done in pursuance of law; that they had the right to transport said pupils and to make said contract with petitioner; that it was necessary for petitioner to procure an automobile truck to perform said contract, which necessity was known to said board and superintendent, and he did, at large expense, buy said truck and equip the same, which truck and equipment were of no use to petitioner except for the purpose of enabling him to perform said contract; that petitioner entered upon performance of said contract on September 5, 1921, and performed same until the middle of October, 1921, and was ready, able, and willing, and offered to perform the same during the eight months aforesaid, but said board, on October 15, 1921, peremptorily and without cause discharged petitioner from his employment under said contract, and employed another to transport.said pupils; that after the breach of said contract by said board, said superintendent audited and said board approved for payment and paid petitioner the sum of $80 for hauling said Lakeside pupils during the month of September, 1921, in accordance with said contract, but said superintendent has refused to audit and said board has refused to approve for payment the sum of $80 due petitioner for October, 1921; that petitioner's net profit for the month of September, 1921, was $60, and for October, 1921, $60, and said contract was worth to petitioner the sum of $60 per month during the remainder of the term for which it was made, and by the aforesaid breach of said contract said truck, bought and equipped at an expense of $1250, became useless and of no value; that by reason of said breach said board and superintendent injured and damaged petitioner and became indebted to him in the sum of $420; and that said superintendent has refused to audit and said board has refused

to approve for payment said $420 or any part thereof. Petitioner prayed for a mandamus nisi requiring said board and superintendent to show cause why a mandamus should not be issued requiring said superintendent to audit and said board to approve for payment and requiring said board and superintendent to pay petitioner the sum of $150, with interest from June 7, 1921, for transporting pupils from the Union, Lakeside, and Kathleen schools to the school at Perry during the nine months of the school year 1920-1921 in pursuance of said contract, and the sum of $80, with interest from November 1, 1921, for hauling said Lakeside pupils during the month of October, 1921, and the sum of $420 due petitioner for damages on account of the breach by said board of said contract to haul said Lakeside pupils to and from the Perry school during the school year of 1921-1922, and that on the hearing said mandamus be made absolute.

By an amendment petitioner alleged, "that the official actions of the County Board of Education of Houston County, concerning the authorizing and making of the contracts sued on, and the terms of said contracts as fixed by said County Board of Education, were recorded on the minutes of said Board of Education in writing," and that "the terms of said contracts so fixed by said board were submitted to petitioner in writing by the County School Superintendent of Houston County by direction of said board, and petitioner assented and agreed to the terms of said contracts as fixed by said County Board of Education and submitted in writing to petitioner by the County School Superintendent, and performed the same as alleged in this petition."

The defendants demurred generally to the petition on the grounds: (1) that no cause of action is set out therein; (2) that the contracts sought to be enforced by mandamus are not alleged to be in writing and entered upon the minutes of the board of education as required by law; (3) that the defendants are not legally authorized to make and enter into said contracts; and (4) that there is a misjoinder of parties in that this proceeding is brought against the superintendent and the board jointly, when the law requires that claims to be paid out of the school funds of a county must be audited by the county school commissioner before being presented to the county board of education for payment. The defendants demurred specially to the allegations of the petition

touching the purchase of the truck and that same had become of no value, on the ground that these allegations do not state an element of damage that can be recovered against defendants in this proceeding. The trial judge overruled all the grounds of demurrer, and to this judgment the defendants excepted.

*C. E. Brunson,* for plaintiffs in error.

*John P. Ross,* and *E. B. Weatherly,* contra.

HINES, J. (After stating the foregoing facts.)

1. Must a contract between the county board of education and a person for the transportation of pupils to and from a public school, in a case where the board is authorized to provide such transportation, be reduced to writing, signed by both parties, and spread upon the minutes of such board, in order to be enforceable against such board by the party so contracting with it? It is insisted by the defendants in the court below, who at the time of the institution of this suit were members of such board, and the superintendent of the public schools of the county, that such a contract must be in writing and spread upon the minutes of the board. This contention is based upon section 386 of the Code of 1910, which provides that "All contracts entered into by the ordinary with other persons in behalf of the county must be in writing and entered upon their minutes." The provision on this subject in the Codes of 1861 and 1868 is in the identical language of the present Code, except that in those Codes the words "justices of the inferior court" are employed where the word "ordinary" appears in the present Code. Code (1861), § 465; Code (1868), § 527. After the adoption of the constitution of 1868, jurisdiction over county matters, which had been vested in the justices of the inferior court, was lodged in the ordinary of each county. Code (1873), §§ 337, 5101, 5149. So in the Code of 1873 and all subsequent editions thereof this provision stands as it does in the present Code. By its terms this section applies only to all contracts entered into by the ordinary with other persons in behalf of the county. If we adhere to its letter and stick in the bark in its construction, it would not apply to contracts entered into by any other officer than the ordinary; but this court, in dealing with this section, has applied it to contracts entered into by county commissioners in behalf of the county. *Milburn* v. *Commissioners of Glynn County,* 112 *Ga.* 160 (37 S. E. 178) ; *Jones* v. *Bank of Cumming,* 131 *Ga.*

48

614 (63 S. E. 36) ; *Weathers* v. *Easterling,* 153 *Ga.* 601 (113 S. E. 152). In the case first cited Chief Justice Simmons used the broad language that this section "requires that all contracts entered into by the county authorities with other persons, in behalf of the county, must be in writing and entered on their minutes." In the first headnote of the second case cited it is said that this provision requires that "all contracts entered into by the ordinary (or county commissioners having charge of the county affairs) with other persons in behalf of the county must be in writing and entered on their minutes." While this point was not directly involved in the first case above cited, was not involved at all in the second case cited, and was not expressly raised in the last case cited, we think the construction placed on this section in those cases is the correct one. We believe that this section should be made applicable to contracts made by any officer who may be substituted by legislative act in the place of the ordinary over county matters. It would not be going too far to apply this section to an officer so substituted in the place of the ordinary in the management of county matters. But we think that we would be invading the province of the legislature in making this section of the Code applicable to contracts made by other county officials, not in behalf of the county, on which the county would not be liable, and on which the county could not be sued. In no sense is a contract of the kind under consideration one made in behalf of the county. The county is in no sense a party to this contract. The county could not be held liable for its breach, nor could it be sued thereon. The board of education alone is liable upon this contract. The members of the board alone can be sued for its breach. The general county funds could not be reached under a judgment obtained against the board of education for a breach of this contract. The only funds which could be applied to the satisfaction of a judgment against such board for such breach would be "the public-school funds of the county derived from the State, or raised by county-wide taxation as authorized by the constitutional amendment ratified November 2, 1920." *McKenzie* v. *Board of Education of Floyd County,* 158 *Ga.* 892 (124 S. E. 721).

So we are of the opinion that the only contracts which come within the terms of this section of the Code are contracts made by some county official in behalf of the county, to which the county

is a party and on which the county would be liable if the contract was broken by it. The contract between the board of education and a person for the transportation of pupils to and from a public school is not one made in behalf of the county. It is a contract of the board of education, and not of the county. It is made in behalf of a school district. It is a contract of such board. The board is a party to it, and not the county. The board is responsible for its breach, and not the county. Nothing to the contrary of what is said above was ruled in *Smith* v. *Board of Education,* 153 *Ga.* 758 (113 S. E. 147). In that case this court was defining the meaning of the words, "corporate authority," as used in the amendment to the constitution of this State proposed by the act of 1919 and adopted November 2, 1920. Acts 1919, p. 66. In that case this court held that the county board of education, in recommending taxation for the maintenance of public schools in a county, acted for and in behalf of such county and through "its corporate authority." In that case this court was not dealing with the question now under consideration, and that case is not authority for the proposition that a contract made by the county board of education for the transportation of pupils to and from a public school was a contract made in behalf of the county.

2. Was the county board of education of Houston County legally authorized to make with the plaintiff the contracts set out in the petition in this case? This question is raised by a ground of the defendant's demurrer which challenges the power and authority of such board to enter into these contracts. The board is authorized to provide means for the transportation of pupils and teachers to and from any school which it is authorized to establish, whenever such board deems it for the best interest of such school. Code of School Laws, Acts 1919, pp. 288, 327, § 93; *McKenzie* v. *Board of Education,* supra. Such board can pay for such means of transportation "from the public-school funds of the county derived from the State, or raised by county-wide taxation as authorized by the constitutional amendment ratified November 2, 1920. Ga. Laws 1919, p. 66, Park's Code Supp. 1922, § 6579." *McKenzie* v. *Board of Education,* supra. Did the board of education have authority to consolidate the schools mentioned in plaintiff's petition with the school at Perry? By the act of September 26, 1889 (Acts 1889, p. 1295), provision was made for the estab-

lishment of a public school system in the Town of Perry. By section 9 of this act it was provided "that the board of education of Houston County shall not establish or open any school within the corporate limits of Perry." The Code of School Laws declares that it is "substituted for the existing school laws of this State, and all laws and parts of laws in conflict herewith are hereby repealed." Acts 1919, p. 288, 8 Park's Code (1922 Supp.), p. 295. This Code further declares that nothing therein contained shall be construed to annul or repeal any local law now of force in any city or county of this State providing for the organization and maintenance of public schools in such city or county. Acts 1919, p. 340, § 128, 8 Park's Code Supp. 1922, § 1438(1). Under this local law the board of education of Houston County is without authority to establish and maintain any common or public school in the City of Perry. It can not accomplish this end by consolidating other district schools with the school established under the above local act in Perry, or by establishing a public or common school independently of such municipality. It seems to be the general policy of the State to keep independent municipal school systems and the county system of public or common schools separate and distinct. Certainly this is so under the above local act providing for the establishment and maintenance of a common or public school in the City of Perry.

It may be said that under the following acts, to wit, the act of August 18, 1919 (Acts 1919, p. 287), for the establishment and maintenance of one or more consolidated public schools in each county of this State, and the act of August 15, 1921 (Acts 1921, p. 178), which are found in 8 Park's Code Supp. 1922, § 1437(r), the county board of education is authorized to provide for the high school training of rural boys and girls at any consolidated school in the county, where, in the judgment of the board, the best facilities are provided and where such school may be most accessible to the pupils attending; and that this board of education could furnish the means of transportation of pupils to and from such school. We do not think that these acts authorize the board of education of Houston County to consolidate rural schools with the school established and maintained in the City of Perry by that municipality. Whether this board under these acts could consolidate rural public schools with a school established and maintained

by it in the City of Perry to furnish "high school training of the rural boys and girls" of said county is not now for decision by this court.

So we are of the opinion that the board of education was without authority to make the contracts sued on, and could not expend the county educational funds for the purpose of transporting pupils to and from the school at Perry. It follows that the county funds could not be expended by the board in providing means for transportation of pupils to and from such school. *Pace* v. *County Board of Education,* 150 *Ga.* 777; *Board of Education* v. *Butler,* 154 *Ga.* 569 (115 S. E. 10) ; *Glenn* v. *Trion Co.,* 157 *Ga.* 639 (122 S. E. 52).

3. But it is insisted that the law of this case has been fixed by the decision of the Court of Appeals in the case of *Board of Education* v. *Hunt,* 29 *Ga. App.* 665 (116 S. E. 900), and that this law must now be followed, although the decision of that court may be incorrect. The Court of Appeals in that case did not rule that the plaintiff was entitled to recover under the facts set forth in his petition. The only ruling made in that case by the Court of Appeals was that "A county board of education is not a body corporate with authority to sue and be sued, in the ordinary sense." So we do not think that the Court of Appeals held that the plaintiff was entitled to recover on the contracts sued on in that case and involved in this case.

4. Applying the above rulings, we do not think that the petition set forth a cause of action, and the demurrer thereto should have been sustained. These rulings make it unnecessary to determine whether there was a misjoinder of parties and of causes of action. *Judgment reversed. All the Justices concur.*